IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JANET MASON,

      Plaintiff,

v.                                                          Case No. 3:18-cv-00322-N (BT)

AT&T SERVICES, INC.,

      Defendant.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil action is Defendant AT&T Services, Inc.'s Motion for Summary Judgment (ECF No. 22). For the following reasons, the District Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff Janet Mason's claims with prejudice.

**I.
Background**

Mason worked for AT&T Services, Inc. (AT&T) for approximately 20 years. Compl. at 2 (ECF No. 3). In the seven months before she filed her Original Complaint in this case, she alleges she suffered discriminatory and retaliatory actions. *Id.* at 2. First, she claims that her manager, Jason McKinney, threatened her in the workplace on three separate occasions and thus created a hostile and fearful working environment. *Id.* Mason alleges she reported McKinney to AT&T's Human Resources Department, but McKinney remained her manager. *Id.* Mason

also describes a one-on-one meeting with McKinney where he "licked his tongue out at [her] in a sexual way and stared up and down at [her]." *Id.* She alleges AT&T again failed to assign her a new manager. *Id.* Mason also recounts a meeting where several employees allegedly referred to Mason with nonverbal signs or signals:

> During a recent organizational meeting held by my director, Ellen Watson[,] a video was played of John Stankey regarding email etiquette. Mr. Stankey started frowning his forehead up severely like a stank face during the video. My manager, Jason McKinney[,] felt the need to utilize non-verbal ques [sic] and scratched his nose and coughed excessively. Three other employees in the meeting were also used to scratch their nose as Mr. Stankey frowned up his forehead. These non-verbal ques [sic] implied I am talking to you or about you. The event was coordinated. All the employees who scratched their nose including Mr. Stankev are Anglo Saxon and I am African American.

*Id.* at 3. She also claims that "employees in the office . . . make reference to my hair, clothes, shoes, weight, and they follow me to the restroom to smell the stalls when I exit." *Id.* at 4.

Mason also alleges McKinney required her to meet with him weekly, assigned her impossible tasks, and gave her poor performance reviews. *Id.* at 3. Specifically, she claims that after AT&T eliminated the team she managed and required her to learn a new role, "my boss gave me a directive that I had to complete the work within 24 hours and I had never performed this type of work before." *Id.* Mason also accuses AT&T of tampering with her work computer on several occasions. *Id.* She claims she experienced technical issues when using AT&T's internal processes for applying for new AT&T positions and that AT&T cancelled

or closed job postings after she placed bids on them. *Id.* at 4. Thus, Mason contends she was never afforded an opportunity to interview for new positions at AT&T. *Id.* at 4.

Lastly, she alleges she was discriminated against when her manager would not permit her to work from home. *Id.* Her allegations regarding her work-from-home privileges are, in pertinent part, as follows:

> Six of my peers are allowed to work from home three days a week but I am not. My boss advised me I needed to have physical presence in the office with my client. All contract managers have the same client and they are not required to work in the same manner. All of my training is performed online. Human Resources failed to properly address this issue and stated working from home is a privilege. When a privilege is extended to all employees except one it is a form of discrimination. I am discriminated against because of my race.

*Id.* Mason concludes her Complaint by stating it "does not include all the sexual harassment acts committed by AT&T but it includes some of the more targeted acts that have occurred within the workplace[,]" and that "AT&T is also responsible for tampering with my mobile device and with harassment efforts outside of work." *Id.*

Mason attached to her Complaint a Charge of Discrimination (the "Charge") she filed with the Equal Employment Opportunity Commission (the "EEOC") on January 25, 2018. *Id.* at 6-7. On the Charge, she checked boxes indicating she was the victim of discrimination based on race and sex, as well as retaliation. *Id.* at 6. Notably, she included the following "particulars," or allegations, related to her

claim:

> a.      I have been assigned extra work and been given unrealistic expectations by my manager Jason McKinney, Associate Director.
>
> b.      I have been sexually harassed by Mr. McKinney with suggestive looks and running his tongue over his mouth seductively during one-on-one meetings.
>
> c.      I have been denied the opportunity to work from home unlike those not in my protected class.
>
> d.      I have had interference with my computer functions by the company and have had to submit 25 to 60 desk tickets as of December 2017.
>
> e.      I have been threatened by Mr. McKinney on 3 separate occasion by him yelling at me during 2 meetings and 1 phone call.
>
> f.      Since making an Ethics Hotline complaint about Mr. McKinney's treatment[,] he has retaliated against me by requiring me to meet with him every week.

*Id.* The EEOC mailed Mason a right-to-sue notice on January 25, 2018. *Id.* at 5. Mason then filed her Original Complaint in this case on February 8, 2018. *Id.* at 1. AT&T filed an answer on March 16, 2018. Answer (ECF No. 9). The Court issued an Initial Scheduling Order (the "Scheduling Order") on August 13, 2018. *See* Order at 1 (ECF No. 14). The Scheduling Order set an August 31, 2018 deadline for filing amended pleadings and a November 30, 2018 deadline for completing discovery. *Id.* at 3.

AT&T timely filed its Motion for Summary Judgment and supporting brief on December 14, 2018, in which it argues: (1) Mason failed to exhaust

4

administrative remedies; (2) Mason did not suffer an ultimate employment action linked to race or sex; (3) Mason's hostile work environment claims fail because she cannot demonstrate the alleged conduct was severe or pervasive or that AT&T failed to take prompt remedial action; (4) Mason's retaliation claim fails because she did not engage in a protected activity and because she cannot overcome AT&T's legitimate, non-retaliatory reason for its actions. Def.'s Br. at 2-3 (ECF No. 23). Mason responded to the Motion in the form of "Objections" filed on December 27 and 31, 2018. (ECF Nos. 27, 28). The latter-filed objection consisted of an identical version of Mason's brief, but without any supporting evidence. *See generally* Obj. (ECF No. 27). AT&T filed a Reply on January 10, 2019. Then, Mason filed two additional documents: a "Motion to Oppose Summary Statement," (ECF No. 30), and a "Motion to Oppose AT&T's Motion to Oppose Summary Statement." (ECF No. 32.). By separate Order, the Court deemed the Motions to Oppose to be improper surreplies and struck the surreplies from the record. Ord. (ECF No. 38). AT&T's Motion for Summary Judgment is thus fully briefed and ripe for adjudication.

## II.
## Legal Standards

### Summary Judgment

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive

law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the non-movant, *id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.

1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the nonmovant fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. U.S. Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

<u>Discrimination and Retaliation</u>

Plaintiff brings her claims for discrimination and retaliation under Title VII. Compl. at 7. Such claims may be proved through direct evidence, statistical proof, or the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under the *McDonnell Douglas* framework, a plaintiff must first

7

establish a *prima facie* case of discrimination. *Id.* (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008). If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)). Once the defendant has responded with a legitimate, non-discriminatory reason,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that race, color, sex, religion,

or national origin was a motivating factor for the employment practice at issue. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).

"The burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in *McConnell Douglas* . . . is also applicable to Title VII unlawful retaliation cases." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Therefore, once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If the defendant introduces evidence which, if true, would permit the conclusion that the adverse employment action was non-retaliatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff. *Id.*

## II.
## Preliminary Matters

First, in its motion, AT&T summarizes a history of legal proceedings involving allegations by Plaintiff that AT&T has implanted microphones in her body and uses those microphones to harass her, control her food intake, and vibrate her body, including a 2013 lawsuit that was dismissed under 28 U.S.C. §1915(e)(2), *see Mason v. AT&T Services Inc.,* 3:13-cv-00858-D-BH, and a 2018 lawsuit that was dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3), *see Mason v. AT&T Services Inc.*, 3:18-cv-00139-

B-BN.[1] Def.'s Br. at 13-16. AT&T argues that Mason's "history of frivolous allegations against AT&T significantly undermines her credibility and makes it less likely that a jury could reasonably find in her favor." *Id.* at 17. To the extent AT&T invites the Court to consider allegations from Mason's other lawsuits as diminishing her credibility, the Court declines to do so. "Credibility determinations have no place in summary judgment proceedings because non-movants' summary judgment evidence must be taken as true." *Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (internal quotations omitted) (quoting *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018); *Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994)).

---

[1] Mason has sued AT&T in the Northern District of Texas on two other occasions. First, on February 22, 2013, Mason sued AT&T alleging employment discrimination, harassment, intentional infliction of emotional distress, and invasion of privacy. Def.'s App. at 130-143 (ECF No. 24). Mason claimed that AT&T (1) "play[ed] audible noises and sounds" to force her to resign; (2) intercepted her internet activity and telephone calls; (3) allowed Joel Osteen of Joel Osteen Ministries, Joyce Meyer of Joyce Meyer ministries, and Pastor Marcus D. King to view her through cameras, hear all of her conversations, learn her personal information, and intercept e-mail sent to her in an effort to force her to work for them; (4) failed to interview her for numerous positions. *Id.* Mason's February 2013 lawsuit was dismissed in its entirety upon the recommendation of the magistrate judge. The magistrate judge noted that Mason's harassment claims were of a "fantastic and delusional nature" and her tort claims were "irrational" and "lack[ed] an arguable basis in fact." *Id.* at 144-49. On January 19, 2018, Mason filed a separate complaint with this Court against AT&T alleging that AT&T owned and controlled illegal microphones in her ears and teeth and tampered with her phone and computer. *Id.* at 183. The Court dismissed Mason's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3). *Id.* at 185.

Next, in its reply, AT&T objects to Mason's exhibits filed in support of her summary judgment response and argues those exhibits should be excluded from the record. Def.'s Reply at 5 (ECF No. 29). Specifically, AT&T argues that the documents attached to Mason's response are not properly authenticated and that an attached declaration of Qiana Garrett is not a proper declaration under 28 U.S.C. § 1746.

The Court agrees Garrett's declaration is deficient and should be excluded from the record. Under Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." 28 U.S.C. § 1746 sets out the requirements for proper declaration:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify,

11

verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

The Fifth Circuit has held that "[d]eclarations . . . that are dated and made on penalty of perjury . . . constitute '[ ]adequate summary judgment evidence.'" *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017) (quoting *Stewart v. Guzman*, 555 F. App'x 425, 431 (5th Cir. 2014) (per curiam)); *see also Garcia v. U Pull it Auto & Truck Salvage, Inc.*, 2016 WL 427382, at *1 (N.D. Tex. Feb. 4, 2016) ("An affidavit or declaration, made under penalty of perjury pursuant to 28 U.S.C. § 1746, can adequately support a motion for summary judgment when it is made on personal knowledge and shows that the affiant or declarant is competent to testify on the matters stated. *See* Fed. R. Civ. P. 56(c)(4).").

Here, Garrett's declaration states "I, Qiana Garrett, am giving my sworn witness account on Janet Mason's behalf." Obj. at 12 (ECF No. 28). The declaration fails to state whether the declaration is made on personal knowledge or if Garrett is competent to testify on the matters stated therein. In addition, Garrett did not state the declaration was made under penalty of perjury, so it cannot properly be considered as summary judgment evidence. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-07 (5th Cir. 1988) (disregarding affidavit as summary judgment proof where affidavit, as drafted, was not made "under penalty of perjury" and verified as "true and correct").

Thus, having first determined it should not consider Garrett's declaration, the Court turns to AT&T's objections to Mason's other documentary evidence submitted with her response. Under Federal Rule of Civil Procedure 56(c)(2), "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Advisory Committee Note on Rule 56(c)(2) sets out the following burden when a party objects under subdivision (c)(2):

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.

Fed. R. Civ. P. 56, Advisory Comm. Notes, 2010 Amendment. The Fifth Circuit has emphasized that "[a]t the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)) (overruling objections to notices of default as not self-authenticating and not authenticated by any witness testimony where various declarations filed by proponent demonstrated that the notices could be presented in a form admissible in evidence). Without the support of an affidavit or declaration, Mason cannot carry her burden of demonstrating that her documents are capable of being

13

presented in a form that would be admissible in evidence. The Court thus sustains AT&T's objections to Mason's exhibits filed in support of her summary judgment responses.

### III.
### Analysis

<u>Failure to Exhaust Administrative Remedies</u>

Plaintiffs bringing claims for discrimination or retaliation under Title VII must exhaust administrative remedies by filing a timely charge with the EEOC and receiving a right-to-sue notice. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). Filing a timely EEOC charge is a statutory prerequisite to bringing federal discrimination and retaliation claims. *Nat'l R.R Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002). When a plaintiff files an EEOC charge of discrimination, the scope of a subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This reasonable expectation rule requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dall.*, 723 F.2d 1195, 1201 (5th Cir. 1984).

A claim is not reasonably expected to grow out of an individual's EEOC Charge where the claim is not alleged in a charge. *See Kebiro v. Walmart*, 193 F.

App'x 365, 367 (5th Cir. 2006); *Thomas v. Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000). "Failure to exhaust is not a procedural 'gotcha' issue. It is a mainstay of proper enforcement of Title VII remedies." *McClain v. Lufkin Indus.*, 519 F.3d 264, 272 (5th Cir. 2008). As a general rule, courts do not recognize lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation. *Id.*

AT&T argues that because Mason's Charge is limited to the allegedly discriminatory or retaliatory conduct of McKinney, Mason has failed to exhaust her administrative remedies for any alleged discriminatory or retaliatory conduct of other AT&T employees. Def.'s Br. at 26. The Court does not find Mason's Charge as limiting on her claims as AT&T contends. Mason's Charge alleges the following:

> a.     I have been assigned extra work and been given unrealistic expectations by my manager Jason McKinney, Associate Director.
>
> b.     I have been sexually harassed by Mr. McKinney with suggestive looks and running his tongue over his mouth seductively during one-on-one meetings.
>
> c.     I have been denied the opportunity to work from home unlike those not in my protected class.
>
> d.     I have had interference with my computer functions by the company and have had to submit 25 to 60 desk tickets as of December 2017.
>
> e.     I have been threatened by Mr. McKinney on 3 separate occasion by him yelling at me during 2 meetings and 1 phone call.

> f.    Since making an Ethics Hotline complaint about
> Mr. McKinney's treatment he has retaliated against me
> by requiring me to meet with him every week.

Compl. at 6. Mason also stated: "I believe that I was discriminated against and harassed because of my Race-Black/American and Sex-Female in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I was retaliated against after making an Ethics Hotline complaint against the treatment by Mr. McKinney." *Id.* at 7. By comparing Mason's Charge to her Complaint, AT&T argues that the Charge did not set forth the following claims alleged in her Complaint: (1) AT&T employees coordinated to use non-verbal cues, such as scratching their nose, during a meeting to imply they were discussing Plaintiff; (2) AT&T employees made references to Plaintiff's hair, clothes, shoes and weight and follow Plaintiff into the restroom to smell the stalls; (3) AT&T closed open jobs on its internal job boards after Plaintiff applied; (4) Plaintiff was not given an opportunity to interview for job transfer opportunities.

On November 29, 2018, without leave of court, Mason filed an amended pleading containing new factual allegations. Am. Compl. at 1 (ECF No. 21). Among other things, Mason alleged that "shortly after my lawsuit and complaints I was wrongfully fired on May 1st." *Id.* at 3. Mason also filed attachments to the amended pleading, *see Id.* at 5-46, including a new EEOC charge where Mason states: "On or about January 25, 2018, I filed an EEOC Charge of Discrimination against the above named Respondent, EEOC charge number 450-2018-00626. Since filing the above mentioned charge, I have been retaliated against. Specifically, on or about

February 22, 2018, I received an invalid and inaccurate performance review that rated me below expectations." *Id.* at 33. Mason also appended to the amended pleading a new right-to-sue notice listing February 26, 2018, as the date it was mailed. *Id.* at 34. By separate Order (ECF No. 37), the Court granted AT&T's Motion to Strike Mason's Amended Complaint because she failed to satisfy the standard required under Fed. R. Civ. P. 16(b)(4) and show good cause exists for allowing an amendment. Indeed, Mason failed to respond to AT&T's Motion to Strike and failed to address Defendant's argument that her Amended Complaint was untimely and unduly prejudicial. Accordingly, none of the new factual allegations in the Amended Complaint or the documents appended to it are properly before the Court.

With respect to the allegations regarding other AT&T employees, the Court finds that Mason exhausted her administrative remedies. In liberally construing her Charge and Complaint—as the Court must—these allegations fall generally under Mason's statements in her Charge that she was harassed. However, the allegations in her Complaint that AT&T closed open jobs only after Mason applied and failed to interview her for job transfer opportunities are not "like or related to" the other allegations in her Charge. Under the Charge's scope, the EEOC presumably did not investigate AT&T's alleged failure to promote Mason. Even if the Court considered Mason's amended EEOC Charge and the other evidence submitted in support of her summary judgment response, there is no evidence that Mason exhausted her administrative remedies with respect to any claim related to

17

Mason's attempt to apply for, or denial of, a new internal position at AT&T. This claim is not properly before the Court.

<u>Discrimination</u>

To the extent Mason contends AT&T discriminated against her by treating her less favorably than similarly-situated employees outside her protected class, Mason cannot prove a *prima facie* case. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (holding that a plaintiff can establish a *prima facie* case of discrimination by showing that she (1) belongs to a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside her protected class or was treated less favorably than similarly-situated employees outside the protected class). Here, AT&T argues that Mason cannot establish the third element—that she suffered an adverse employment action.

"Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). The Fifth Circuit "has a strict interpretation of the adverse employment element of [the] prima facie intentional discrimination case" under Title VII. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *see also Dixon v. Moore Wallace, Inc.*, 2006 WL 1949501, at *8 (N.D. Tex. July 13, 2006), aff'd, 236 F. App'x 936 (5th Cir. 2007). For purposes of a discrimination claim brought under this statute, "[a]dverse employment actions include only ultimate

18

employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559 (alteration in original; internal quotation marks and citation omitted). "[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action for purposes of a discrimination claim under Title VII." *Dixon*, 2006 WL 1949501, at *8 (quoting *Pegram*, 361 F.3d at 282) (internal quotation marks omitted);

By her Original Complaint, Mason has not alleged an adverse employment action; more importantly, she has not presented evidence of an action by AT&T qualifying as an adverse employment action. For example, she did not allege or present evidence that starting a new role as a Senior Sourcing Specialist in the Corporate Supply Chain Group was a demotion or altered her compensation. Compl. at 2. Additionally, she has not established that the training regimens, 24-hour deadlines for completing work, or poor performance reviews qualify as adverse employment actions. *See Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *4 (N.D. Tex. Dec. 12, 2008) (holding that "disciplinary warnings and negative performance evaluations do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions"), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012) (on rehearing)**.** As noted, AT&T's alleged failure to promote Mason and its apparent termination of Mason are not properly before the Court. And even if the Court had allowed Mason's Amended Complaint and summary judgment evidence, there is no evidence that AT&T promoted, or replaced Mason with,

someone outside her protected class. Thus, Mason has failed to establish a *prima facie* case of discrimination based on being treated less favorably than similarly-situated employees outside her protected class.

<u>Hostile Work Environment</u>

To establish a *prima facie* case of sex discrimination under a theory of a hostile or abusive work environment, Mason must prove (1) she belongs to a protected class, (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based upon sex, (4) the harassment affected a term, condition, or privilege of her employment, and (5) AT&T knew or should have known of the harassment and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *Woods v. Delta Bev. Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). With respect to cases where the alleged harasser is a supervisor with immediate or higher authority over the harassed employee, the employee need only meet the first four elements of the test. *Watts*, 170 F.3d at 509. Here, no party disputes McKinney was Mason's supervisor with authority over here, and he was either the sole alleged harasser or among other employees while participating in alleged sexual harassment; therefore, Mason need only establish the first four elements.

Mason cannot establish that she was subjected to unwelcome sexual harassment that affected a term, condition, or privilege of her employment. In determining if a workplace environment is sufficiently abusive to be actionable under Title VII, a court must review all the relevant circumstances, including the

frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998) (citing *Faragher*, 524 U.S. 775, 787–88 (1998)). Incidental or occasional sexual comments, discourtesy, rudeness, or isolated incidents (unless extremely severe) are not discriminatory changes in the terms and conditions of a worker's employment. *Id.* "To be actionable, the challenged conduct must be objectively offensive, meaning that a reasonable person would find the conduct hostile or abusive, and subjectively offensive, meaning that the victim perceived the conduct to be hostile or abusive." *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 538 (N.D. Tex. 2005). With respect to sexual harassment, it is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Faragher*, 524 U.S. at 786 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (some internal quotation marks omitted)).

Mason's allegations of sexual harassment do not describe harassment so severe or pervasive so as to be actionable under Title VII. Mason's Complaint includes allegations that McKinney threatened her in the workplace on three separate occasions and thus created a "hostile and fearful working environment" for Mason. Compl. at 2. In addition, Mason avers that during a one-on-one meeting with McKinney, he "licked his tongue out at me in a sexual way and stared up and down at me." *Id.* She also describes an incident where McKinney and various

21

unidentified employees rubbed their noses and coughed in her presence. *Id.* In her response, she cursorily claims that "Denita Branch was named several times as someone who harassed me," but does not explain how Branch harassed her or what Branch said or did. As for evidence of these events, Mason proffers none. To the extent Mason refers to other lawsuits filed in this Court, she cannot incorporate pleadings or evidence from a separate action into this case.

With respect to McKinney staring at Mason and licking his lips, the Court does not find that this conduct, if true, was severe or pervasive. *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (finding plaintiff's allegations that a male coworker stared at her and touched her arm, shoulder, and waist inappropriately on several occasions were not severe or physically threatening); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (finding harassment non-severe and non-pervasive where female employee alleged male coworker "harassed her in the following ways: (1) he once made a remark to [plaintiff] about another employee's body, (2) he once slapped her on the behind with a newspaper, (3) he "grabbed or brushed" against [plaintiff's] breasts and behind, (4) he once held her cheeks and tried to kiss her, (5) he asked [plaintiff] to come to the office early so that they could be alone, and (6) he once stood in the door of the bathroom while she was washing her hands"). Next, in considering the event where Mason's coworkers coughed or rubbed their noses in front of her, "[t]he Supreme Court has repeatedly stated that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

amount to discriminatory changes in the 'terms and conditions of employment.'"
*Hockman*, 407 F.3d at 328 (quoting *Faragher*, 524 U.S. at 788). Thus, in considering the totality of the allegations of sexual harassment, Mason has failed to show the alleged sexual harassment affected a term or condition of her employment. Mason has failed to establish a *prima facie* case of a hostile work environment claim under a sexual harassment theory.

<u>Retaliation</u>

To establish a *prima facie* case of unlawful retaliation, Mason must prove (1) she engaged in activity protected by Title VII, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *Long*, 88 F.3d at 304. If Mason establishes a *prima facie* case of retaliation, the burden shifts to AT&T to proffer a legitimate, non-retaliatory reason for its actions. *Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 171 (5th Cir. 2014). If AT&T meets this burden, Mason may still prevail by showing that AT&T's reasons are pretext for retaliation. *Id.* AT&T argues that Mason has not engaged in a protected activity and is unable to establish pretext. Def.'s Br. at 27-28.

*Protected Activity*

An employee has engaged in an activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *Long*, 88 F.3d at 304. "The first of these is known as the 'opposition clause;' the second as the 'participation clause.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016).

The present case is an opposition-clause case. The participation clause is not at issue when an employee files an EEOC charge after the alleged adverse

employment action. *Byers*, 209 F.3d at 428; *see also Taliaferro v. Lone Star Implementation & Elec. Corp.*, 693 F. App'x 307, 310 (5th Cir. 2017) (per curiam) ("The 'participation clause' is inapplicable here because [Plaintiff] did not file her EEOC charge until June 22, 2015, more than one month after Lone Star terminated her employment."). Here, Mason filed her Charge after the series of alleged adverse employment actions. The Court notes again that Mason filed an updated charge alleging that she was retaliated against for filing her initial charge, but she failed to timely amend her Complaint. In considering only the timing of the EEOC Charge provided in Original Complaint as the determinative reference point, the Court finds Mason filed the EEOC Charge after any alleged adverse employment action. A retaliation claim arising under the participation clause is not before the Court.

"To satisfy [the] opposition requirement, [Mason] need only show that she had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (quoting *Byers*, 209 F.3d at 428). However, "[t]he Fifth Circuit has made plain that 'a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute a protected activity.'" *Obondi v. UT Sw. Med. Ctr.*, 2017 WL 2729965, at *13 (N.D. Tex. June 23, 2017) (quoting *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015)). Generally invoking terms like "harassment" or "retaliation" "does not itself constitute 'protected activity within the meaning of Title VII, [if the] complaint lack[s] a racial or gender basis." *Davis*, 448 F. App'x at 493.

Mason complained about McKinney's behavior, but repeatedly failed to allege race or sex discrimination in any formal complaint. *See* Def.'s App. 72-82. For example, Mason made several complaints to an internal ethics hotline AT&T maintains so AT&T employees can lodge formal complaints about conditions of employment or improper workplace conduct. *Id.* Mason never alleged that harassment, or any other discriminatory conduct, was based on her race or gender. *Id.* Again, Mason has not presented her own evidence she engaged in a protected activity. Between her hotline complaints and any other complaint she alleges she made, the record contains no evidence she engaged in a protected activity. *Jackson v. Dall. Cty. Juvenile Prob. Dep't*, 2007 WL 2187250, at *10 (N.D. Tex. July 30, 2007) (finding that memos that alluded to harassment that did not contain details regarding any factor to which Title VII is applicable were not protected activities). Lastly, Mason alleges various AT&T employees teased her and mocked her at meetings. But even assuming Mason reported this behavior or filed a formal complaint about it and the summary judgment record contained evidence of it, "not every insult, slight, or unpleasantness gives rise to a valid Title VII claim." *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 539 (5th Cir. 1998). Mason has not satisfied her burden of demonstrating that she complained of race or sex discrimination or any unlawful employment practice sufficient to satisfy the opposition clause.

*Legitimate Non-Discriminatory Reason*

Even if Mason could establish a *prima facie* case of discrimination or retaliation, AT&T proffers evidence showing that it had a legitimate non-discriminatory reason for certain actions it took with respect to Mason's employment. "If an employee establishes a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions." *King v. Life Sch.*, 2011 WL 1562964, at *5 (N.D. Tex. Apr. 26, 2011) (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). AT&T need only articulate a lawful reason, regardless of its persuasiveness or credibility. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

Here, AT&T offers uncontroverted evidence of non-discriminatory reasons for various decisions it made regarding Mason and her employment responsibilities. Specifically, AT&T offers McKinney's declaration, based on his personal knowledge and submitted under penalty of perjury, that AT&T downsized the original team Mason managed and changed her role because of work automation and business reorganization. Def.'s App. at 2-3. Additionally, McKinney stated in his declaration that Mason was held to the same performance standards as similarly-situated employees with respect to working-from-home privileges. *Id.* at 3-4. Moreover, McKinney stated that AT&T investigated Mason's complaints of computer tampering and technological "glitches" and found no evidence of any computer tampering or other technological issues with Mason's

26

computer equipment. *Id.* at 4. Thus, AT&T has met its summary judgment burden to articulate a legitimate, non-discriminatory reason for its actions. The burden now shifts to Mason to raise a genuine issue of material fact by showing that AT&T's proffered reasons are a pretext for retaliation.

*Pretext*

"Under the pretext alternative, Mason must introduce 'some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination [or retaliation] was the actual reason.'" *See King*, 2011 WL 1562964, at *5 (N.D. Tex. Apr. 26, 2011) (citing *Nichols v. Lewis Grocer,* 138 F.3d 563, 566 (5th Cir. 1998)). To carry this burden, Mason must "rebut each nondiscriminatory or nonretaliatory reason articulated by [AT&T]." *McCoy*, 492 F.3d at 557 (5th Cir. 2007).

Mason has failed to meet her burden to point to any evidence permitting a jury to find that AT&T's proffered reasons are mere pretext. Mason's summary judgment Response merely restates her grievances against AT&T without citing to any evidence to support her allegations. Even if Mason established a *prima facie* case of discrimination or retaliation, she has failed to identify any competent, summary judgment evidence demonstrating mixed motive or pretext. And even though it had no obligation to do so, the Court reviewed the documents Mason submitted in support of her summary judgment Response. However, none of those documents is sufficient to rebut the nondiscriminatory and nonretaliatory reasons articulated by AT&T. Therefore, AT&T is entitled to summary judgment.

27

## Recommendation

For the reasons stated, Defendant AT&T Services, Inc.'s Motion for Summary Judgment (ECF No. 22) should be GRANTED, and Plaintiff Janet Mason's Complaint, claims, and causes of action should be DISMISSED with prejudice.

Dated August 27, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).